# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SMARTHOME VENTURES, LLC d/b/a PEPPER, et al.¹ | Case No. 24-11640 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 78** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE DEBTOR OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")² by Albert Altro, Chapter 11 Trustee (the "Trustee" or "Chapter 11 Trustee") [D.I. 71] pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (as amended or modified, the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules (the "Local Rules") of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for entry of an order (this "Sale Order") (i) authorizing and approving the sale (the "Sale") of certain of the Debtors' assets free and clear of all liens, claims, encumbrances and interests under the terms of that certain Asset Purchase Agreement dated as of December 16, 2024, by and between the Trustee on behalf of debtor SmartHome Ventures, LLC (the "Debtor" or the "Seller")

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers are SmartHome Ventures, LLC (7570) and Get Notion, LLC (3963). The location of the Debtors' headquarters is 7900 College Blvd., Suite 128, Overland Park, KS 66210.

² Capitalized terms used but not defined herein shall have the same meanings given to such terms as in the Merkury APA (as defined herein), the Bidding Procedures (as defined herein), and/or the Motion, as applicable.

and Merkury Innovations LLC (and/or its designee) ("Merkury" or the "Purchaser"), substantially in the form attached hereto as **Exhibit A** (as may be subsequently amended, restated, or otherwise modified in accordance with its terms and the terms of this Sale Order, the "Merkury APA"), (ii) authorizing and approving the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (as defined in the Merkury APA, the "Assumed Executory Contracts") identified by the Purchaser and more fully described in the APA, in each case subject to payment of Cure Costs (as defined in the Merkury APA), and (iii) granting related relief; this Court having entered the Bidding Procedures Order (as defined below) on September 16, 2024 [D.I. 106]; the Purchaser having been selected as the Successful Bidder in accordance with the Bidding Procedures Order (as defined below); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Motion, the Sale, the Merkury APA, and this Sale Order; and the Court having conducted an initial Sale Hearing on November 13, 2024 which was adjourned to November 19, 2024 (together the "Sale Hearing"); and this Court having reviewed and considered the Motion and all objections thereto including but not limited to the Limited Objection of Argo Design, LLC (the "Argo Objection") [D.I. No. 157], and the Chapter 11 Trustee's Response to the Limited Objection to Sale Filed by Argo Design, LLC along with supporting exhibits and the Declaration of Scott Ford dated November 7, 2024 (collectively, the "Trustee Response") [D.I. No. 190], and the arguments of counsel made, and the evidence adduced, at the Sale Hearing; and all objections and responses to the relief requested in the Motion having been heard and overruled, withdrawn, or resolved on the terms set forth in this Sale Order; and it appearing that the relief requested in the Motion is in the best interest of the Debtor, its estate, its stakeholders, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at

the Sale Hearing establish just cause for the relief granted herein; and upon the entire record of the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[3]

**Jurisdiction, Final Order and Statutory Predicates**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this Chapter 11 Case pursuant to Bankruptcy Rule 9014.

B.      This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of this Sale Order as set forth herein.

D.      The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a), 363, 365, 503, and 507, Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014, and the applicable Local Rules.

**Bidding Procedures**

E.  On September 16, 2024, this Court entered the *Order: (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Scheduling*

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*an Auction and Hearing to Approve the Transaction and Approving the Form and Manner of Notice Thereof; (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases and (D) Establishing Procedures in Connection with Protections Afforded to a Stalking Horse Purchaser* (the "Bidding Procedures Order") [D.I. 106], which, among other things, (i) established procedures in connection with the sale of the Debtors' assets (the "Bidding Procedures"), (ii) approved procedures relating to the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (the "Contract Procedures"), (iii) scheduled an auction (the "Auction") and the Sale Hearing and approved the form and manner of notice thereof, and (iv) granted related relief.

F.   By *Notice of Revised Dates and Deadline for Sale of Assets* dated October 24, 2024 (the "Revised Deadlines") [D.I. 169], the Auction and relevant Bid deadlines were extended by the Chapter 11 Trustee.

G.   Merkury was entitled to submit a Credit Bid in amounts up to the amount of outstanding indebtedness owed to it and it did submit a Credit Bid consistent with the Bid Procedures.

H.   As demonstrated by (i) the testimony and other evidence submitted by declarations and adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, all aspects of the Sale process have been conducted in compliance with the Bidding Procedures and Bidding Procedures Order.

### Notice of the Sale, Auction and the Cure Payments

I.   Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, the sale of the Get Notion Assets, the assumption, assignment and/or transfer of the Assumed Executory Contracts, the Proposed Cure Amounts (as defined below), and all deadlines related to the foregoing, including the Revised Deadlines and a reasonable opportunity to object or be heard with respect thereto, and to the entry of this Sale Order, has been afforded to all known interested

4

persons and entities entitled to receive such notice, including, but not limited to, the following parties (the "<u>Notice Parties</u>"): the Office of the United States Trustee; (ii) counsel to the DIP Lender; (iii) counsel to the Prepetition Secured Parties; (iv) Kalamata Capital Group,; (v) MCA Servicing Company; (vi) Proventure Capital; (vii) all non-Debtor counterparties to any executory contract or unexpired lease that may be an Assumed Executory Contracts; (viii) all persons known to have expressed an interest in acquiring all or any portion of the Debtor's assets or making an equity or other investment in the Debtor; and (ix) all other parties that had filed a notice of appearance and demand for service of papers in the Chapter 11 Cases as of the date of service

J.   In accordance with the provisions of the Bidding Procedures Order, the Trustee has filed and served a cure notice (collectively, the "<u>Cure Notice</u>") [D.I. 111] upon all of the non-debtor counterparties (the "<u>Contract Parties</u>") to the Debtor's Executory Contracts, including the Assumed Executory Contracts, setting forth: (i) the contract(s) and/or lease(s) that may be assumed by the Debtor and assigned to the Purchaser; (ii) the name and address of the Contract Parties thereto; (iii) the amount, if any, determined by the Debtor to be necessary to be paid to cure and compensate for any existing default in accordance with Bankruptcy Code sections 365(b) and 365(f)(2) under each Executory Contract, including the Assumed Executory Contract (collectively, the "<u>Proposed Cure Amounts</u>"); and (iv) the deadlines by which any such Contract Party must file an objection to the proposed assumption and assignment of any Assumed Executory Contract.

K.     The service of such Cure Notice (i) was good, sufficient and appropriate under the circumstances of the Chapter 11 Case; (ii) provided such counterparties with a full and fair opportunity to object to such assumption, assignment, or transfer and to the Proposed Cure Amounts set forth in the Cure Notice; and (iii) was in compliance with the Bidding Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules.  Accordingly, no other

3770729v1

or further notice need be given in connection with such assumption, assignment, or transfer or with respect to the Proposed Cure Amounts.

L.     As evidenced by the declarations of service previously filed with the Court [Docket Nos. 129, 131, 133, 134, 135, 138, 139, 140, 143, and 148] and as approved under the Bidding Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Sale Hearing, the Auction, the Motion, the Revised Deadlines, the Sale, and the assumption, assignment and/or transfer of the Assumed Executory Contracts, the Proposed Cure Amounts, all deadlines related to the foregoing, and the entry of this Sale Order has been provided to all parties-in-interest; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this Chapter 11 Case, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with Bankruptcy Code sections 102(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014, the applicable Local Rules, and the Bidding Procedures Order; and (iii) no other or further notice of with respect to such matters is necessary or shall be required.

## Business Judgment

M.     The Trustee has demonstrated good, sufficient and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Merkury APA and the other Transaction Documents (as defined in the APA), including, without limitation, the assumption, assignment, and/or transfer of the Assumed Executory Contracts (the Sale, the assumption, assignment, and/or transfer of the Assumed Executory Contracts, and the other transactions contemplated by the APA being referred to collectively herein as the "Transaction") pursuant to Bankruptcy Code sections 363 and 365, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, its estate, and its creditors.

6

**Good Faith of the Purchaser; No Collusion**

N.       The Purchaser is not an insider (as that term is defined in Bankruptcy Code section 101(31)) of the Debtor.

O.       The Purchaser is purchasing the Acquired Assets in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser is therefore entitled to the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code, and the Purchaser has otherwise proceeded in good faith in all respects in connection with the Transaction in that, *inter alia*: (i) the Purchaser recognized that the Trustee on behalf of the Debtor's estate was free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Purchaser complied with the provisions in the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (v) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of directors or controlling stockholders exists between the Purchaser, on the one hand, and the Debtor, on the other hand; (vii) the Purchaser is entitled to Credit Bid pursuant to Bankruptcy Code section 363(k); and (viii) the negotiation and execution of the Merkury APA, and the other Transaction Documents were at arms' length and in good faith.

P.       Neither the Debtor, the Trustee, the Purchaser, nor any of their respective Affiliates or Representatives (each as defined in the Merkury APA), has engaged in any conduct that would cause or permit the Merkury APA, or any of the other Transaction Documents, or the consummation of the Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any person in connection therewith.

3770729v1

**Highest and Best Offer**

Q.      In accordance with the Bidding Procedures Order, the Merkury APA was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and the Purchaser was a Qualified Bidder (as defined in the Bidding Procedures Order).

R.   The Chapter 11 Trustee conducted a marketing and auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order.  The marketing and auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets, and the Trustee and his retained professionals afforded potential purchasers a full and fair opportunity to make higher and better offers for the Acquired Assets.

S.      The Merkury APA constitutes the highest or otherwise best offer for the Acquired Assets, and will provide a greater overall recovery for the Debtor's estate than would be provided by any other available alternative.  The Chapter 11 Trustee's determination that the Merkury APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Trustee's business judgment.  The Merkury APA represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the Chapter 11 Case.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic or other value to the Debtor's estate than the Purchaser.  Approval of the Merkury APA and the relief requested in the Motion, and the prompt consummation of the Transaction contemplated thereby, is in the best interests of the Debtor, its creditors, the estate and other parties-in-interest.

**No Fraudulent Transfer; Not a Successor**

T.      The Merkury APA was not entered into for the purpose of hindering, delaying or defrauding creditors of the Debtor under applicable law, and none of the parties to the Merkury APA or any of the other Transaction Documents are consummating the Transaction with any

8

fraudulent or otherwise improper purpose. The purchase price for the Acquired Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory or possession of the United States or the District of Columbia.

U.      Except as expressly set forth in the Merkury APA, the Purchaser shall have no Liability (as defined in the Merkury APA), responsibility, or obligations of any kind or nature whatsoever for any Interest (as defined below) of or against the Debtor, or otherwise related to the Acquired Assets, by reason of the transfer of the Acquired Assets to the Purchaser. The Purchaser is not acquiring or assuming any Interest, except as expressly set forth in the Merkury APA.

V.      The Purchaser, by virtue of the Sale, (i) is not a successor (and shall not be deemed a successor) to the Debtor or its estates by reason of any theory of law or equity, (ii) has not, *de facto* or otherwise, merged with or into the Debtor, (iii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtor or its estate, business, or operations, and (iv) does not have a common identity of incorporators, directors or equity holders with the Debtor.

### Validity of the Transfer

W.      Subject to the entry of this Sale Order, the Chapter 11 Trustee on behalf of the Seller has full corporate power and authority (i) to perform all of the obligations under the Merkury APA and the other Transaction Documents, and the Purchaser's prior execution and delivery thereof and performance thereunder, is hereby ratified in full, and (ii) to consummate the Transaction. The Merkury APA and the other Transaction Documents, and the Transaction contemplated thereby, have been duly and validly authorized by all necessary corporate action. No further consents or approvals are required for the Chapter 11 Trustee on behalf of the Seller to

consummate the Transaction or otherwise perform its obligations under the Merkury APA or the other Transaction Documents, except in each case as otherwise expressly set forth in the Merkury APA or applicable Transaction Documents.

X.      As of the Closing Date, the transfer of the Acquired Assets to the Purchaser, including, without limitation, the assumption, assignment and transfer of the Assumed Executory Contracts, will be a legal, valid, and effective transfer thereof, and vests the Purchaser with all right, title, and interest of the Debtor in and to the Acquired Assets and the Assumed Executory Contracts, free and clear of all Interests (as defined below) accruing or arising any time prior to the Closing Date, except as expressly set forth in the Merkury APA with respect to the Assumed Liabilities.

## <u>Section 363(f) Is Satisfied</u>

Y.      The Purchaser would not have entered into the Merkury APA and would not consummate the Transaction contemplated thereby if the sale of the Acquired Assets, including the assumption, assignment and transfer of the Assumed Executory Contracts, to the Purchaser were not free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Merkury APA with respect to Assumed Liabilities), including, but not limited to, the claims set forth in the Argo Objection or if the Purchaser, any of its Affiliates or Subsidiaries (as defined in the Merkury APA), or any of its respective Representatives, would, or in the future could, be liable for any of such Interests (except as expressly set forth in the Merkury APA with respect to Assumed Liabilities).

Z.      The Chapter 11 Trustee on behalf of the Seller may sell or otherwise transfer the Acquired Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Seller, its estate or any of the Acquired Assets who did not object, or who

10

withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force and effect, that such creditor had immediately prior to the Petition Date, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

AA.      As used in this Sale Order, the term "Interest" includes, in addition to the types of claims described in paragraph BB below, all of the following, in each case to the extent against or with respect to the Seller or in, on, or against or with respect to any of the Acquired Assets: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, licenses, rights to obtain or continue licenses (whether pursuant to contract or applicable law, including Section 365(n) of the Bankruptcy Code, or otherwise), post-termination rights and remedies arising under any contract or agreement of any Debtor other than under Assumed Executory Contracts in accordance with the Merkury APA, rights of first refusal, rights of setoff (except for setoffs exercised prior to the Petition Date), or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Chapter 11 Case, whether imposed by agreement, understanding, Law, equity or otherwise, including, but not limited to, (i) Interests that purport to give to any person a right or option to effect a setoff against

11

or any forfeiture, modification or termination of the Debtor's interests in the Acquired Assets, or any similar rights; (ii) Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, contracts, licenses, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, (iii) Interests that are or constitute, or that arise in connection with or with respect to, any Excluded Liability; (iv) Interests that arise from or in connection with any bulk sales or similar law, and (v) Interests arising under or in connection with any acts, or failures to act, of the Seller or any of the Seller's predecessors, Affiliates, or Subsidiaries, or any of their respective Representatives, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, or other applicable state or Federal securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

BB.    Except as expressly set forth in the Merkury APA, and without limiting the nature or scope of paragraph AA above, to the greatest extent allowed by applicable law, the transfer of the Acquired Assets, including the assumption, assignment and/or transfer of the Assumed Executory Contracts, to the Purchaser will not subject the Purchaser, or its Affiliates or Subsidiaries, or any of their respective Representatives to, or subject any Acquired Asset to or provide recourse for, any Liability (as defined in the Merkury APA) or Lien (as defined below) whatsoever with respect to the operation or condition of the Debtor's business or any of the Acquired Assets prior to or at the Closing or with respect to any facts, acts, actions, omissions, circumstances or conditions existing, occurring or accruing with respect thereto prior to or at the Closing Date, including, without limitation, any Liability or Lien arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance arrangements, change

12

in control agreements or other similar agreements to which the Debtor is or was a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any paid-time-off or pension plan of the Debtor, (iii) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any Environmental Laws, (vi) products liability or warranties, (vii) any bulk sales or similar law, (viii) any litigation by or against the Debtor and (ix) the Laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability. For the avoidance of doubt, the Liabilities and Liens set forth in this paragraph are included in the defined term "Interests" for all purposes of this Sale Order.

CC.     As used in this Sale Order, the term "Lien" includes any liens (as defined in Section 101(37) of the Bankruptcy Code), debts (as defined in Section 101(12) of the Bankruptcy Code), security interests, claims, easements, mortgages, charges, indentures, deeds of trust, rights of way, encroachments, or any other encumbrances and other restrictions or limitations on ownership or use of real or personal property or irregularities in title thereto.

13

**Assumption, Assignment and/or Transfer of the Assumed Executory Contracts**

DD.    The assumption, assignment and/or transfer of the Assumed Executory Contracts to the Purchaser pursuant to the terms of this Sale Order is integral to the Merkury APA and the Transaction, and is in the best interests of the Debtor and its estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee on behalf of the Debtor's estate.

EE. To the extent necessary or required by applicable Law, the Trustee has or will have as of the Closing Date: (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assumed Executory Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code through funds provided by Merkury, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Except as set forth herein, the respective Proposed Cure Amounts set forth on Exhibit 1 annexed to the Cure Notice  (including any Additional Cure Notice(s) (as defined in the Bidding Procedures Order) served in accordance with the Contract Procedures, provided that, with respect to any such Additional Cure Notice(s), the period of objection for such Additional Cure Notice(s) has expired without objection) are the maximum amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assumed Executory Contracts:

FF.    The promise of the Purchaser to perform the obligations arising under the Assumed Executory Contracts after their assumption and assignment to the Purchaser constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the

counterparties to such Assumed Executory Contracts. Those non-Debtor parties to Assumed Executory Contracts who did not timely object to the assumption, assignment or transfer of their applicable Assumed Executory Contract, or to their applicable Proposed Cure Amount or to adequate assurance of Purchaser's future performance, in each case in accordance with the Bidding Procedures Order are deemed to have consented thereto for all purposes of this Sale Order.

The Argo Objection

GG.     The Bankruptcy Court having reviewed and considered both the Argo Objection and the Trustee's Response thereto and having heard testimony and reviewed and considered evidence presented at the Sale Hearing by the Trustee, including the Statements of Work and related contract documents between the Debtor and Argo, and argument presented by counsel for Argo Design, LLC ("Argo"), overruled the Argo Objection and found and determined that : (i) Argo failed to present any evidence that it has any ownership or intellectual property rights in or to any code and/or other work it provided to the Debtor; (ii) Argo failed to demonstrate that the Debtor is not the sole owner of the code and/or other work that is proposed to be sold pursuant to the Merkury APA ; and (ii) that all such code and/or other work can be transferred to the Purchaser free and clear of all Interests that were or could have been asserted by Argo (the "Argo Claims").

**Compelling Circumstances for an Immediate Sale**

HH.     To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, and to preserve the Seller's liquidity, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Merkury APA. Time is of the essence in consummating the Sale. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transaction contemplated by this Sale Order, the Merkury APA and the other Transaction Documents.

15

II.    Given all of the circumstances of the Chapter 11 Case and the adequacy and fair value of the purchase price under the Merkury APA, the proposed transfer of the Acquired Assets (and the assumption and assignment of the Assumed Executory Contracts) to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment, is in the best interests of the Debtor, its estate, and its creditors, and should be approved.

JJ.    The consummation of the Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363 and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transaction.

KK.        The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtor, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.    The Motion, and the relief requested therein, are granted and approved, and the Transaction contemplated thereby and by the Merkury APA and the other Transaction Documents are approved, in each case as set forth in this Sale Order.

2.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order and the record in connection therewith are incorporated herein by reference.

3. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.

## Approval of the Merkury APA and Other Transaction Documents; Binding Nature

4. The Merkury APA and the other Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

5. The consideration provided by the Purchaser for the Acquired Assets under the Merkury APA is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable Law, and the Transaction may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

6. Pursuant to sections 363 and 365 of the Bankruptcy Code, the Seller is authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Sale and the Transaction pursuant to and in accordance with the terms and conditions of the Merkury APA and the other Transaction Documents (including, without limitation, any and all actions and covenants that arise, or otherwise apply to the time period, after the Closing Date), and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of its obligations as contemplated by the Merkury APA and the other Transaction Documents, in each case without further notice to or order of this Court.

7. The Merkury APA and other Transaction Documents shall be binding in all respects upon the Chapter 11 Trustee, the Debtor, its estate, the Purchaser, and all successors and assigns of the foregoing, including, without limitation, any other estate representative, if any, subsequently

appointed in the Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of the Chapter 11 Case or any other successor case.  This Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors, all holders of equity interests in the Debtor, all holders of any claim(s) (whether known or unknown) against the Debtor, any holders of Interests against, in or on all or any portion of the Acquired Assets, all non-Debtor parties to the Assumed Executory Contracts, the Purchaser, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Chapter 11 Case.

8.      The failure to specifically include any particular provision of the Merkury APA or any of the documents, ancillary documents, or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, the Merkury APA, or instrument, it being the intent of the Court, the Seller and the Purchaser, that the Merkury APA and each document, ancillary document, or instrument be authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing, and each such provision shall be enforceable by or against each of the parties thereto.

**Transfer of Acquired Assets Free and Clear of Interests; Injunction**

9.      Pursuant to sections 105(a), 363(b), 363(f), 363(k), 365(b), and 365(f) of the Bankruptcy Code, the Chapter 11 Trustee on behalf of the Seller shall transfer the Acquired Assets, including but not limited to the Assumed Executory Contracts, to the Purchaser on the Closing Date in accordance with the Merkury APA and the other Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and the Purchaser shall take title to and possession of such Acquired Assets free and clear of all Interests (except as expressly set forth in the Merkury APA with respect to the Assumed Liabilities).

10.     All such Interests shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing Date, all Interests of any kind or nature whatsoever (except as expressly set forth in the Merkury APA with respect to Assumed Liabilities) have been unconditionally, irrevocably and forever released, discharged and terminated in, on or against the Acquired Assets.  The provisions of this Sale Order authorizing and approving the transfer of the Acquired Assets free and clear of Interests shall be self-executing, and neither the Chapter 11 Trustee on behalf of the Debtor's estate, the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

11.     Except as expressly permitted by the Merkury APA or this Sale Order, all persons and entities holding Interests (other than Assumed Liabilities) are hereby forever barred, estopped and permanently enjoined from asserting their respective Interests against the Purchaser, any of its Affiliates and Subsidiaries, and any of their respective Representatives, and each of their respective property and assets, including, without limitation, the Acquired Assets.  On and after the Closing Date, the Purchaser shall be authorized to execute and file such documents, and to take all other actions as may be necessary or desirable, on behalf of each holder of an Interest to release, discharge and terminate such Interests in, on and against the Acquired Assets as provided for herein, as such Interests may have been recorded or may otherwise exist.  On and after the Closing Date, and without limiting the foregoing, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order constitutes authorization under

3770729v1

all applicable jurisdictions and versions of the Uniform Commercial Code for the Purchaser to file UCC termination statements with respect to all security interests in or liens on the Acquired Assets.

12.     For the avoidance of doubt, the transfer of the Debtor's Assets to Purchaser is free and clear of all Interests, or assertions of any Interest, by Argo as contained in the Argo Objection, or which could have been included or raised by Argo in the Argo Objection and/or prior to the Sale Hearing all of which were overruled at the Sale Hearing.

13.     On and after the Closing Date, any persons holding an Interest (other than a permitted Lien or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to further demonstrate the release of their respective Interests in the Acquired Assets, as such Interests may have been recorded or otherwise filed.  The Purchaser may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other territory or jurisdiction in which the Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.  All persons and entities that are in possession or control of any portion of the Acquired Assets on the Closing Date shall promptly surrender possession and control thereof to the Purchaser at the Closing.  To the extent any person holding an Interest (other than a Permitted Lien or an Assumed Liability) fails to comply with the provisions of this paragraph, such persons may be subject to a turnover and/or other adversary proceeding commenced by the Chapter 11 Trustee on behalf of the Debtor and/or the Purchaser.

14.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit (as defined in section 101(27) of the Bankruptcy Code) may deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant relating to the operation of the

3770729v1

Acquired Assets or the Assumed Executory Contracts, condition such a grant to, or discriminate with respect to such a grant on account of the filing or pendency of the Chapter 11 Case or the consummation of the Transaction.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge and terminate any of the Interests or to otherwise consummate the Transaction contemplated by this Sale Order, the Merkury APA or any other Transaction Document.

### Assumed Executory Contracts; Cure Payments

15.      Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Trustee on behalf of the Debtor's estate's assumption, assignment and transfer to the Purchaser of the Assumed Executory Contracts are hereby authorized and approved in full subject to the terms set forth below.  The Purchaser shall, at the Closing, pay or cause to be paid the Cure Costs under the Assumed Executory Contracts in accordance with the Merkury APA, so that such Assumed Executory Contracts may be assumed by the Trustee on behalf of the Debtor's estate and assigned to Purchaser on the Closing Date in accordance with this Sale Order, the Merkury APA and the other Transaction Documents; provided that the Cure Costs for the Objecting Counterparty Contracts shall be the lesser of (x) the Maximum Cure Costs for such contract, (y) any amount agreed among the Purchaser, and the

respective Objecting Counterparty, and (z) any amount determined by a final order of the Court; and further provided, for the avoidance of doubt, that the Purchaser retains the right not to take assignment of any Objecting Counterparty Contract if the Cure Cost for such contract is not agreed by Purchaser.

16.     Upon and as of the Closing Date and payment of the Cure Costs to the respective Contract Parties, the Chapter 11 Trustee on behalf of the Debtor's estate is authorized and empowered to, and shall, assume, assign and/or transfer each of the Assumed Executory Contracts to the Purchaser free and clear of all Interests (except as expressly set forth in the Merkury APA with respect to the Assumed Liabilities).  The payment of the applicable Cure Costs (if any) shall, pursuant to Bankruptcy Code section 365 and other applicable law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing Date and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and as of the Closing Date, other than such payment or reservation, neither the Trustee, the Debtor, the Purchaser, nor their respective Affiliates or Subsidiaries shall have any further Liabilities or obligations to the non-Debtor parties to the Assumed Executory Contracts with respect to any additional amounts or claims (as defined in Bankruptcy Code section 101(5)) that arose, accrued or were incurred at any time on or prior to the Closing Date.  The Purchaser has provided adequate assurance of future performance under the relevant Assumed Executory Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f).

17.     To the extent any provision in any Assumed Executory Contract assumed or assumed and assigned (as applicable) pursuant to this Sale Order (a) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assignment (including, without limitation, any "change of control" provision), or (b) is modified, breached or terminated,

or deemed modified, breached or terminated by any of the following: (i) the commencement of the Chapter 11 Case, (ii) the insolvency or financial condition of the Debtor at any time before the closing of the Chapter 11 Case, (iii) the Trustee's assumption or assumption and assignment (as applicable) of such Assumed Executory Contract, or (iv) the consummation of the Transaction, then such provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or condition such assumption or assignment, to modify, terminate or declare a breach or default under such Assumed Executory Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assumed Executory Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to Bankruptcy Code sections 365(b), 365(e), and 365(f).

18.     All requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Trustee on behalf of the Debtor's estate and assignment to the Purchaser of the Assumed Executory Contracts have been satisfied.  Upon the Closing Date and payment of the Cure Costs to the respective Contract Parties, in accordance with Bankruptcy Code sections 363 and 365, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor's in, to and under the Assumed Executory Contracts, and each Assumed Executory Contract shall be fully enforceable by the Purchaser in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order.  Upon and as of the Closing, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Executory Contracts and, accordingly, the Debtor's and the Debtor's estate shall be relieved from

23

any further liability under the Assumed Executory Contracts pursuant to Bankruptcy Code section 365(k). Additionally, upon the entry of this Sale Order (including prior to the Closing Date), the Purchaser and the Contract Parties are authorized to communicate directly without any need for the consent or involvement of the Debtor.

19.    Upon the payment of the applicable Cure Costs to the respective Contract Parties, if any, the Assumed Executory Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assumed Executory Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

20.    All Counter Parties to the Assumed Executory Contracts that failed to timely object to entry of this Sale Order shall be deemed to have consented to such assumption and assignment under Bankruptcy Code section 365(c)(1)(B), and the Purchaser shall enjoy all of the Debtor's rights, benefits and privileges under each such Assumed Executory Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

21.    Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtor that any Assumed Executory Contract is an executory contract or unexpired lease under Bankruptcy Code section 365.  The failure of the Chapter 11 Trustee or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Executory Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assumed Executory Contracts.

22.    With respect to the Executory Contracts by, between and among, the Debtor and Aligned Technologies, TD Synnex and/or Amazon Web Services, Inc. to the extent the Purchaser

24

cannot reach agreement on the Cure Amounts under the respective agreements, then those agreements will not be assumed.

**Additional Injunction; No Successor Liability**

23.    Effective upon the Closing Date and except as expressly set forth in the Merkury APA with respect to Assumed Liabilities, all persons and entities are forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral or other proceeding), to collect, recover or offset any Interest; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to an Interest, (iii) creating, perfecting or enforcing any Interest, or (iv) asserting any setoff (except for setoffs exercised prior to the Petition Date), or right of subrogation with respect to an Interest, in each case as against the Purchaser, any of its affiliates or subsidiaries, or any of their respective representatives, or any of their respective property or assets, including the Acquired Assets.

24.    The Purchaser is not, and shall not be deemed, as a result of the consummation of the Transactions contemplated by the Merkury APA and the other Transaction Documents, to: (i) be a legal successor to the Debtor or its estate by reason of any theory of law or equity, (ii) be an affiliate of the Debtor, (iii) have, *de facto* or otherwise, merged with or into the Debtor, or (iv) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect.

25.    Except as expressly set forth in the Merkury APA with respect to Assumed Liabilities, the transfer of the Acquired Assets, including, without limitation, the assumption, assignment and transfer of any Assumed Executory Contract, to the Purchaser shall not cause or result in, or be deemed to cause or result in, the Purchaser, any of its affiliates or subsidiaries, or

25

any of their respective representatives, having any liability, obligation, or responsibility for, or any Acquired Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at law or in equity, directly or indirectly, and whether by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise.

## Good Faith

26.     The Transaction contemplated by this Sale Order, the Merkury APA and other Transaction Documents are undertaken by the Purchaser without collusion and in good faith, as that term is defined in Bankruptcy Code section 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale and other Transaction shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transaction (including the assumption, assignment and/or transfer of the Assumed Executory Contracts), unless such authorization and consummation are duly stayed pending such appeal. The Purchaser is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges and protections of Bankruptcy Code section 363(m).

27.     The purchase price reflected in the Merkury APA was not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n). The Debtor and the Purchaser have not engaged in any conduct that would cause or permit the Merkury APA or the consummation of the Transaction to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).

## Resolution of Objections

26

28.     <u>Objection of Argo Design, LLC</u>.  The Argo Objection is overruled in its entirety and the Assets of the Debtor can be transferred to Purchaser free and clear of any and all of the Argo's Claims and/or Interests.

29.     <u>Cure Objection of MongoDB, Inc. ("MongoDB")</u>.  On September 18, 2024, the Chapter 11 Trustee filed the *Notice of Contract Parties to Potentially Assumed and Assigned Executory Contracts and Unexpired Leases* [Docket No. 111] (the "Cure Notice"). The Cure Notice identified a contract with MongoDB (the "MongoDB Contract") with a proposed cure amount of $49,663.55. MongoDB filed an objection to the Cure Notice on October 4, 2024 [Docket No. 146] asserting a cure amount of $87,622.20, which the Seller has determined is the correct amount.  Accordingly, in the event the Purchaser takes assignment of the MongoDB Contract, and notwithstanding anything in the Cure Notice to the contrary, the amount necessary to cure all defaults under the MongoDB Contract is $87,622.20 plus any post-petition amounts that come due under the MongoDB Contract and remain unpaid as of the date that the Sale closes, subject to the ability of the Purchaser and MongoDB to agree to a different cure amount.  In the event the Purchaser takes assignment of the MongoDB Contract, any post-petition amounts incurred under the MongoDB Contract on or prior to the date that the Sale closes, but which have not yet become due as of such date, will be paid by the Purchaser in accordance with the payment terms set forth in the MongoDB Contract and/or the relevant MongoDB invoice, subject to the ability of the Purchaser and MongoDB to agree to a different amount.

30.     Night Owl SP, LLC filed an Objection to the Assumption and Assignment of its Contract [D.I. 153].  This Objection is resolved and as further stated on the record of the Sale Hearing, Merkury is not purchasing the asset known as Night Owl or assuming any contract with Night Owl.

31.    Limited Objection of Aseteelflash Suzhou Co. Ltd [D.I. 148] is resolved because Merkury is not assuming this contract.

### Statutory Mootness

32.    Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person obtaining a stay pending appeal, the Seller and the Purchaser are free to close under the Merkury APA at any time, subject to the express terms of Merkury's APA and upon completion of any negotiation and designation of Assumed Contracts.  In the absence of any person obtaining a stay pending appeal, if the Seller and Purchaser close under Merkury's APA, as may be amended, the Seller and Purchaser shall be deemed to be acting in "good faith" and the Purchaser shall be entitled to the protections of section 363 (m) of the Bankruptcy Code as to all aspects of the Transactions contemplated by Merkury's APA if this Order or any authorization contained herein is reversed or modified on appeal.

### Other Provisions

33.    The Purchaser is hereby authorized, in its discretion, in connection with consummation of the Transaction to allocate the Acquired Assets, Assumed Liabilities, and Assumed Executory Contracts among its affiliates, subsidiaries, designees, assignees, and/or successors in a manner as it, in its discretion, deems appropriate and each such person shall be entitled to all of the rights, benefits, privileges and protections of "the Purchaser" as are accorded to the Purchaser under this Sale Order, and the Chapter 11 Trustee on behalf of the Debtor shall, to the extent set forth in the Merkury APA and the other Transaction Documents, cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.  In the event that the Purchaser designates any designee to acquire any Acquired Assets, including, without limitation, any Assumed Executory Contracts, in accordance with the terms and conditions

28

of the Merkury APA, then any reference to "the Purchaser" in this Sale Order shall be deemed to be a reference to "the Purchaser and/or its applicable permitted designee," unless the context requires otherwise, and such permitted designee shall be entitled to, and is hereby granted, the full rights, benefits, privileges and protections of the Purchaser as are set forth in this Sale Order.

34.    To the extent any plan of reorganization or liquidation, or any order of any type or kind entered in the Chapter 11 Case or any subsequent chapter 7 case into which the Chapter 11 Case may be converted, conflicts with or derogates from the terms of the Merkury APA, the applicable other Transaction Documents, or this Sale Order, the terms of the Merkury APA, the applicable other Transaction Documents, and this Sale Order shall control and govern to the extent of any such conflict or derogation.

35.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply.  Accordingly, the Trustee is authorized and empowered to close the Sale immediately upon entry of this Sale Order, subject to the other conditions to Closing set forth in the Merkury APA.

36.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transaction.  To the fullest extent permitted under applicable law, no Transfer Tax will be owed by any party in connection with the transactions contemplated hereby or by any of the other Transaction Documents.

37.    Nothing in this Sale Order or the Merkury APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability (including but not limited to for reclamation and mitigation and any associated long-term protection requirements) to a governmental unit that any entity would be subject to as the owner or operator of property after

3770729v1

the date of entry of this Sale Order.  Nothing in this Sale Order or the Merkury APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

38.    The failure specifically to include any particular provision of the Merkury APA or the other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Merkury APA be authorized and approved in its entirety.

39.    The Merkury APA and the other Transaction Documents may be waived, modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court, provided that any such modification, amendment or supplement shall not have a material adverse effect on the Debtor's estate unless approved by order of this Court.

40.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Merkury APA, the other Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Acquired Assets to the Purchaser; (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under Bankruptcy Code sections 105, 363 and 365 with respect to the Acquired Assets and Assumed Executory Contracts.

41.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.    The automatic stay provisions of Bankruptcy Code section 362 are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Merkury APA and the other Transaction Documents.

43.    To the extent that this Sale Order is inconsistent with the Motion, the terms of this Sale Order shall control and govern.  To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Merkury APA or any other Transaction Document, on the other hand, the terms of this Sale Order shall control and govern.

**Dated: December 16th, 2024**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**

3770729v1